MYERS
*v.*
PERRY.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## BACH *v.* SLIDELL.

1   375
51   1742

Objections to each others claims, waived by a compromise made between the contending parties, cannot be revived in an action to enforce a compliance with the compromise itself. Where the acts of the parties show that the resolutive condition of a contract has been waived by them, the contract must be enforced as if no such condition formed a part of it.

APPEAL from the District Court of the First District, *Buchanan*, J. R. N., and *A. N. Ogden*, for the appellant. *T. A. Clarke*, for the defendant.

The judgment of the court was pronounced by

KING, J.* The plaintiff instituted this action, to compel the defendant to fulfil his engagements contained in the following agreement entered into between the parties:

"New Orleans, 26th December, 1842.

"*John M. Bach*, acting for himself, *P. A. Delachaise* and others, having agreed to waive all claims to a tract of land designated as section eight, township thirteen, range eleven east, entered under the preëmption laws, under what is commonly styled a *float*, said entry being numbered 1264 in the entries of the eastern district of Louistana, and to authorize a patent therefor to be issued in my favor, I do hereby agree that, provided such claim be effectually waived on his part, and that of the other persons concerned, so that a patent may issue thereon in my favor, I will execute to the said *Bach* a conveyance of one-third of the quantity of land which, upon survey, may prove to be contained within the limits of the claim of himself and others, said one-third to be taken from the upper portion of the land patented to me; said *Bach* undertaking the settlement with the various parties concerned of their respective interests therein. This agreement to be void, if the patent do not issue within six months.                          (Signed)                          JOHN SLIDELL."

The plaintiff avers that he made the stipulated waiver, which was effectual; that a patent has issued in favor of the defendant, or of a person substituted by him; and that if it was not obtained within six months after the date of the act, the delay was not caused by himself or his co-proprietors. The defence set up by the defendant is, that the claim asserted in the agreement of the 26th December, 1842, by *Bach*, for himself and others, to the land in controversy,

---

* SLIDELL, J., did not sit on the trial of this case, on account of relationship to the defendant.

was without foundation, and was prepared and prosecuted before the land officers with the view of defrauding the government of the United States and the defendant, by reason of which the agreement is void. It is further contended in argument that, as the patent was not issued until near eighteen months after the term fixed in the agreement, the condition upon which the defendant's obliligation to convey depended has been broken, and that the stipulated nullity must have its effect. Civil Code, art. 2033. In the court below there was a judgment against the plaintiff, from which he has appealed.

It will be necessary to notice briefly the leading facts connected with the controversy out of which this contract grew, in order to ascertain distinctly the issues existing at its date between the parties, and which it was the object of the agreement to terminate.

In 1839, the plaintiff and his co-proprietors presented to the register and receiver of the land office at New Orleans, acting under the law of Congress of 1835, a claim for a tract of land, having four *arpents* front on the Mississippi river, and extending in depth until the two side lines, which converged, came to a point, containing two hundred and sixty-nine superficial *arpents*, being a part of a larger tract granted by the company of the Indies, previous to 1728, to *Daniel de Kolly*, under whom they claimed to hold under mesne conveyances. The claim was reported on favorably under the number 38. The survey shows that the side lines of the tract, when extended, meet about seventy-four *arpents* from the river. In June, 1836, the defendant, *W. C. Mylne*, and others, entered a part of the land embraced in the reported claim, by virtue of a preëmption right, commonly termed a *float*, of *H.* and *R. Usé*, of whom they were the assignees. Their certificate of purchase was numbered 1264½. On the 5th of October, 1838, the plaintiff represented to the commissioner of the general land office, that the entry had been made in violation of the rights of himself and his co-proprietors, and protested against the issuing of a patent in favor of the preëmptors. In consequence of this representation, the certificate no. 1264½ was suspended ; the register and receiver were advised of the alleged conflict, and instructed to examine the subject, and make a report thereon, which should include the testimony adduced, and their opinion.

*Bach* and his co-proprietors protested against the re-opening of their claim for further proof and report, on various grounds, and notified the defendant that, in the event of the investigation proceeding, notwithstanding their protest, they would require full proof of the title under which they claimed, averring that it was invalid, and the sale to him illegal. The register and receiver disregarded the protest, proceeded to the investigation, and, on the 18th of February, 1840, made their report, in which they expressed the opinion that the claim no. 38 was entitled to a depth of only forty *arpents*, and should be restricted to that quanty. Thus located there would have been no conflict between the plaintiff and defendant. After the evidence in relation to the claim no. 38 had been closed, the defendant was called on to produce his titles, that their validity might be tested, which he declined doing for reasons fully stated at the time, and which appeared to have been satisfactory to the land officers. The plaintiff then announced his intention, at a future day, to show the illegality of the defendant's entry.

*Bach* objected to the report, and requested the commissioner to remand the matter for further examination, with instructions to institute inquiry into the validity of the defendant's claim. On the 11th of June, 1840, the defendant

made a communication to the commissioner of the general land office, in which he entered into a full and elaborate examination of the plaintiff's chain of title, and exposed the error into which the register and receiver had fallen in their report of 1837, in recommending the claim no. 38 for confirmation. It was rendered manifest that, the original grant under which the plaintiff claimed to hold was for a tract of land nine miles above the city of New Orleans, whereas the land in controversy was three miles above the city. In this communication the plaintiff is charged with fraud, from which imputation his co-proprietors were exonerated.

The plaintiff's claim was confirmed and reported, by an act of Congress approved the 6th July, 1842, and, on the 15th of August following, the commissioner gave the following instructions to the surveyor general of this State : " In surveying claim No. 38 in the name of *Delachaise* and others, reference, in ascertaining the proper *depth of it*, should be had to the original title, (of which this claim forms a part,) and I request that a careful and thorough examination be made by you, after notice to all concerned, in order to settle its proper limits with certainty."

At this point of their controversy the parties entered into the agreement upon which this suit is founded. From this statement it is evident that they were thoroughly informed of the character of their respective claims, and of the nature of the impediments which existed to the perfection of the title of each, at the date of their agreement. The plaintiff relied on the confirmation of his claim by act of Congress, and still insisted on his right to show the illegality of the sale to the defendant. The defendant, on the other hand, persisted in alleging the claim of the plaintiff to be unfounded and fraudulent, and in his efforts to restrict it in its location to a depth of forty *arpents*. The agreement entered into for the purpose of adjusting these differences, can only be regarded as a compromise, in which each waived the objections which he had previously urged to the claim of the other. These objections cannot be raised in a suit to enforce a compliance with the terms of the compromise itself, which was made for the purpose of terminating those differences.

It is proper to remark that, the testimony of *I. T. Preston, Esq.*, the attorney who presented the plaintiff's claim for confirmation, and prepared the evidence in support of it, exonerates *Bach* from the alleged fraud. That witness states that, he relied on his own exertions in tracing the chain of title ; that the error which was committed was his own, for which the plaintiff is not answerable ; that he honestly believed the claim to be good when he presented it, but after the confirmation he became convinced that he had fallen into an error.

Immediately after the compromise, *Bach* forwarded to the land department at Washington, the stipulated waiver of so much of his confirmed claim as conflicted with the entry of the defendant, and withdrew his opposition to the issuing of a patent in the defendant's favor. Delays however occurred, but from no fault of the plaintiff, and the patent was not issued until the 2d of January, 1844, long after the expiration of the term fixed in the compromise. This term having expired, it is contended that, the condition on which the execution of the defendant's stipulations was made to depend has been broken, and that the contract is void. Such would have been its effect, if the stipulated nullity had not been waived.

After the patent had issued, the defendant addressed the following letter to *Bach :*

48

BACH
*v.*
SLIDELL.

Washington, 7th April, 1844.

Dear Sir: I have your letter of the 26th ult. On the 7th inst. (by the same mail that I answered your first letter,) I sent to Mr. *Mylne* the patent for the land in the rear of *Livaudais,* with some instructions. I find that I have not with me the memorandum of my agreement with you, having left it with my papers at New Orleans. I will therefore thank you to present your copy to Mr. *Mylne,* that he may make a copy of it, and send it to me here, when I will inform him of my views. I regret the delay that has occurred in this matter, but have been in daily expectation that my letter covering the patent had reached Mr. *Mylne.*        Your obedient servant,        JOHN SLIDELL.

To *John M. Bach,* New Orleans.

This letter is evidently in answer to another relating to a performance of the agreement, and indicates no intention to assert a breach of the condition on which its execution depended. On the contrary, it recognizes the obligation, and evinces a desire to fulfil the engagement. Other circumstances, both prior and subsequent to the alleged breach of the condition, show that the relations established between the parties by the contract remained unchanged by the lapse of the six months, and that their reciprocal obligation to execute the contract was recognized by both, notwithstanding the expiration of the term.

The plaintiff and defendant both appeared before the surveyor general, in the month of May, or June, 1843, when the term was on the eve of expiring, for the purpose of entering into the investigation necessary to the report required by the commissioner. That officer, whose testimony is not impeached, states that the impression left on his mind from the examination was, that the parties had compromised their difficulties. No opposition was made by *Bach* to the defendant's title, and no evidence offered in support of his own claim. In July, 1843, a few days after the expiration of the term, a report was made adverse to the plaintiff, in which he acquiesced. It is stated in the report that *Bach* acknowledged the correctness of the decision, and that no further efforts would be made to locate his claim. The surveyor general says that the patent could not have issued within six months from the date of the agreement, and that it would not have issued until he had made the investigation and report required by the commissioner.

It is impossible that persons fully aware of the tardy proceedings of the land department, as these parties were, should not have forseen that, at the late hour when they appeared before the surveyor general, a report could not be made, and a patent issue before the expiration of the six months. Yet they acted in concert in procuring the report, upon which they understood the issuing of the patent to depend. It is not reasonable to suppose that *Bach,* in the absence of an understanding, tacit or expressed, with the defendant, would, at that time, have assisted in procuring a report, the result of which would have been to defeat his claim. It is equally unreasonable to suppose that, after the expiration of the time, when he would have been at liberty to withdraw his waiver, and renew his attacks upon the defendant's title, he would have coöperated in procuring a patent to issue against himself, if the condition had not been considered to have been waived. The defendant, after the lapse of six months, continued to avail himself of the waiver, and report thus procured, to obtain the patent.

We can arrive at no other conclusion from the evidence, than that the resolutory condition of the agreement was waived by the acts of the parties, and that the contract is still in full force between them, and must be executed.

It is therefore ordered that the judgment of the District Court be avoided and reversed. It is further decreed that the defendant is the owner of the tract of land designated as section no. 8, in township 13, of range 11 east, situated in the eastern land district of Louisiana. It is further decreed, that the defendant, *John Slidell*, make a good and valid title to *John M. Bach*, the plaintiff, for one-third of said land, which upon survey may be found to be contained within the limits of the claim numbered 38, as reported by the register and receiver of the south-eastern district of Louisiana for confirmation, and confirmed to *P. A. Delachaise, George Legendre, Simon*, and *James H. Field, John M. Bach, John Louis Drouet*, the heirs of *John Mishon* and *Jerome Toledano*, by act of Congress, approved July 6, 1842, entitled " an act confirming certain land claims in Louisiana," said one-third to be taken from the upper portion of said land decreed to belong to said defendant; the defendant to pay the costs of both courts.