503 So.2d 195 (1987)
Marco T. CASTANO and Garnet C. Castano
v.
Sue Ethel Barrentine BELLINA.
No. CA-5119.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
Rehearings Denied March 19, 1987.
Writ Denied May 29, 1987.
*196 Patrick M. Reily, New Orleans, for plaintiff-appellant.
Albert J. Derbes, II, Windhorst, Patorek & Gaudry, Harvey, for defendant-appellee.
REDMANN, C.J., and GULOTTA, LOBRANO, WARD, and WILLIAMS, JJ.
WARD, Judge.
In this action by the makers of a note against the payee for return of a prepayment penalty not provided for in the note, we must decide whether the payee was entitled to the penalty and if so, whether she can collect attorney fees for protecting her right to the penalty. We hold that the payee could not legally demand a prepayment penalty. Consequently, the payee cannot collect attorney fees. We also hold that any agreement by the makers to pay the penalty to obtain surrender of the note from the payee cannot be enforced.
On October 5, 1978, Sue Ethel Bellina sold a tract of land in Jefferson Parish to Garnet and Marco Castano for $675,000. As part of the purchase price, Mrs. Bellina accepted the Castanos' note for $325,000. The note provided for nine per cent annual interest with principal and interest to be paid in 180 monthly installments of $3,296.48 each. The note made no provision for prepayment. As security for the note, Garnet and Marco Castano gave Mrs. Bellina a mortgage on the property. Mrs. Bellina's mortgage was the second on the property, the first being held by National American Bank which had lent the Castanos their down payment. A third mortgage was held by Citizens and Southern International Bank, which also held a mortgage on the Castanos' home.
Faced with financial difficulties, the Castanos arranged in October 1983 to refinance their home and the Jefferson Parish property by borrowing money from Pelican Homestead to pay off the loans from the banks and Mrs. Bellina. Mrs. Bellina, however, was reluctant to have the Castano loan balance paid out in a lump sum. She decided to accept the Castanos' prepayment of the outstanding principal of $264,006.06 only if they paid a five percent penalty *197 amounting to $13,000. The Castanos thought Mrs. Bellina's demand was unreasonable, and they walked out of the Pelican Homestead loan closing when she insisted upon it. Two days later, however, in the face of imminent bank foreclosures, the Castanos closed the Pelican Homestead loan and paid Mrs. Bellina the balance on her loan plus $13,000. Mrs. Bellina surrendered the note and cancelled the mortgage on the Castanos' property.
The Castanos then filed suit to recover the $13,000. Mrs. Bellina reconvened, seeking attorney's fees payable under the terms of the note which she claims to have surrendered only because the Castanos fraudulently misrepresented that they agreed to her conditions for prepayment of the loan. After a trial, the District Judge denied both the Castanos' claim for return of the $13,000 and Mrs. Bellina's demand for attorneys fees. Both parties appeal.
In ruling against the Castanos, the Trial Judge held that a maker of a note generally has no right to payment before maturity without consent of the holder who is entitled to demand a penalty for prepayment even though the note contains no penalty provision. We disagree and reverse his decision denying the Castanos' claim for return of the $13,000.
The Trial Judge found Lindsay Realty Corp. v. Bellina, 320 So.2d 572 (La. App.4th Cir.1975), dispositive of the prepayment penalty issue. We do not believe Lindsay Realty is controlling. That case held only that there was a substantial difference between a real estate listing that did not contain a right of prepayment by the purchaser and a purchase offer that included the right to prepay the entire balance at any time without penalty. Although Lindsay Realty stated as a basis for its holding that "the maker of a note has no right to payment before maturity without the consent of the holder," we do not believe this rule applies to the facts of the case now before us.
We believe the better authority is La. C.C. art. 1779 (former C.C. art. 2053) as interpreted by In Re Liquidation of Hibernia Bank & Trust Co., 189 La. 813, 180 So. 646 (1938) and State ex rel. Elliott v. Ratzburg, 215 La. 295, 40 So.2d 395 (1949). Article 1779 states: "A term is presumed to benefit the obligor unless the agreement or the circumstances show that it was intended to benefit the obligee or both parties." In the Hibernia Bank case, the Court found that all the stipulations in the note were expressly stated to be in favor of the creditor bank, and hence, the maker could not pay its note before maturity. In the Elliott v. Ratzburg case, the Court held that the debtor could retire the debt before maturity without paying interest for the full term of the note. Although this holding was supported partially by the note's provision for the due date of installments "on or before" the fifth day of each month, it was based primarily upon the presumption that a term of payment is agreed upon in favor of the debtor. Accordingly, we presume that the provision in the note for monthly payments over 15 years was for the benefit of Mr. and Mrs. Castano.
There is nothing in the note, which constitutes the agreement between the parties, to indicate that the extended term was also intended to benefit Mrs. Bellina. She asserted, however, in her answer to the Castanos' suit for recovery of the penalty that she was unwilling to terminate the arrangement for monthly payments because it provided a substantial part of her income. Additionally, at trial Mrs. Bellina testified that she believed that the 15 year payment schedule was advantageous to her for tax purposes. We do not believe these circumstances are sufficient to overcome the presumption that the scheduled payment of the note over 15 years was for the benefit of the Castanos.
Civil Code Article 1780 provides that the party for whose exclusive benefit a term has been established may renounce it. Although this article was enacted after the Castanos executed the note and after they prepaid it, the Comments to the article state that it does not change the law. Comment (b) reads:
This Article asserts a principle that seems unquestionable. It also reflects *198 the very common contemporary practice of including prepayment clauses in loan agreements. In Louisiana jurisprudence a term or condition can be waived by a party for whose benefit it has been established. See Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927); Bach v. Slidell, 1 La.Ann. 375 (1846).
Accordingly, we hold that the Castanos were entitled to renounce the term of the note providing for payment over 15 years and that Mrs. Bellina could not require payment of a penalty when the Castanos chose to prepay the balance of the loan before maturity.
Mrs. Bellina urges as an alternative argument that her dispute with the Castanos was the subject of a compromise settlement, and therefore, the Castanos should be precluded from suing for return of the penalty they paid. She contends that she offered to accept the Castanos' prepayment of the balance of the note and surrender the note only if they also paid the $13,000 penalty and that when the Castanos paid the penalty, they accepted her offer, and upon surrender of the note a binding compromise agreement was formed.
We reject this argument because even if the Castanos agreed to pay the penalty without further contesting Mrs. Bellina's right to it  which the Castanos' attorney denies  any compromise between the parties was without lawful cause and, therefore, a nullity. No agreement exists without a lawful cause. La.C.C. art. 1966. A cause is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. art. 1968. We have held that Mrs. Bellina was not legally entitled to the $13,000 penalty. We believe that enforcement of any agreement which required payment of a penalty before the Castanos could obtain that to which they were entitled by law  the note  is against public policy.
Moreover, the Castanos' attorney insists that he told Mrs. Bellina that if the exigencies of his clients' financial situation forced them to pay the penalty in order to pay off Mrs. Bellina and secure a new loan, his clients reserved their right to litigate Mrs. Bellina's right to extract the penalty. Therefore, the Castanos' payment of the penalty was conditional  subject to the condition that she be found legally entitled to it. We find this view of the Castanos' payment supported by the obligation Mrs. Bellina has to restore a thing which was paid on the supposition of an obligation which does not exist. La.C.C. arts. 2301 et. seq.
Mrs. Bellina appeals the portion of the judgment which dismissed her claim for attorney fees. Having held that Mrs. Bellina is not entitled to the prepayment penalty, we find no basis for an award of attorney fees and affirm the Trial Court's denial of Mrs. Bellina's claim.
For the foregoing reasons, the portion of the judgment of the Trial Court denying the Castanos' claim is reversed. Judgment is rendered in favor of Marco T. Castano and against Sue Ethel Barrentine Bellina for $13,000.00 plus legal interest from October 14, 1983. The Trial Court's denial of Mrs. Bellina's claim for attorney fees is affirmed. All costs to be paid by Mrs. Bellina.
REVERSED AND RENDERED IN PART; AFFIRMED IN PART.
REDMANN, C.J., dissents.
REDMANN, Chief Judge, dissenting

I
The original note was valid, and its term was stipulated in favor of both debtors and creditor.
The majority's fundamental position is that, because an obligation's "term is always presumed to be stipulated in favor of the debtor," La.C.C. 2053 (1870), a loan or other extension of credit at interest secured by mortgage, even when expressly payable in specified payments "on" (not "on or before") a specified date each month over a period of years as in this case, is payable at any time, without interest beyond date of payment, at the option of the debtor.
*199 There is a certain merit to that position (see Demolombe, Cours de Code Napoleon, XXV, 626-631). There is more merit to the contrary position.
Art. 2053 (1870) itself qualifies its presumption that the term favors the debtor, by adding "unless it result from the stipulation, or from circumstances, that it was also agreed upon in favor of the creditor."
Aubry and Rau, Obligations (La.Law Inst, trans.) § 303, explain:
"In general, the term is presumed to have been stipulated solely in the interest of the debtor who by renouncing it, may compel the creditor to receive payment before its expiration. Article 1187 [La.C.C. 2053]. This presumption ceases to exist when it is gathered from the terms and nature of the contract or from the circumstances in which it has been formed, and of which the judge is the sovereign appraiser, that the term has been stipulated in the common interest of the debtor and the creditor21 or only in the interest of the latter."
Footnote 21 is in point:
"Thus, with respect to loan on interest, we may easily admit that the term is stipulated in favor of both the creditor and the debtor. Cf. Toullier, VI, 677; Duranton, XI, 109; Larombiere, II, Art. 1187, No. 5; Colmet de Santerre, V, 110 bis; Zachariae, § 303 and note 11. But see Demolombe, XXV, 629."
Demolombe, § 628, notes that it is "generally admitted in the doctrine" that the term of a loan on interest is stipulated tacitly in favor of creditor as well as debtor. Demolombe takes the contrary position. Moreover, he would disallow as usurious any charge of unearned interest on early payment even if the term were expressly stipulated in the creditor's favor.
As indicated by Aubry and Rau and by Demolombe himself, Demolombe stands alone in deeming the term of a loan at interest not stipulated in favor of lender as well as borrower.
Planiol, Civil Law Treatise (La.Law Inst. trans.), II, 361, says three relevant things. First, he expresses the view that the parties' intention should decide for whose benefit the term is, expressly by the terms of the contract, or tacitly by deduction from the circumstances. Second, he concedes the Code
"is not thus generally understood. It is argued that the derogation can result not only from the terms but also from the nature of the contract (Aubry and Rau, 5th Ed., t. IV, § 303, p. 142). This manner of interpreting Art. 1187 leads to an important practical result; it permits, in certain cases, the elimination of the presumption established by the Code, and allows an opposite result to be reached in certain contracts by reason of their nature: although the intention of the parties is not revealed either by an express clause of the contract, nor by circumstances, the benefit of the term can be considered as common to the two parties, and cannot be renounced by the debtor alone. The question arises principally in connection with the loan on interest, where it is of enormous importance in the conversion of loans made by the big companies and by cities [citing a later section]."
Third, Planiol adds,
"This question has been specially resolved by the jurisprudence with regard to loans on interest, and ably enough, without having to resolve the difficulty of principle raised as to the interpretation of Art. 1187 [citing decisions]. These cases do not at all hold that the loan on interest is not, because of its nature, subject to the presumption of the law, but only that the judges of fact are free to find, according to the circumstances, that the benefit of the term was common to the two parties."
Planiol's second noted observation agrees that Aubry and Rau state the "generally understood" view that the lender is a beneficiary of the term in a loan at interest, again indicating the minority position of Demolombe. Although the majority does not cite Demolombe or other writer, its position is similar to that of Demolombe and therefore inconsistent with the "generally *200 understood" view in France of the source article.
Planiol's third observation, moreover, agrees with Aubry and Rau's that the judge is the "sovereign appraiser" of whether the circumstances prove that the term was for the benefit of both parties. Planiol's "judges of fact" are Louisiana's "triers of fact," namely trial judges or juries. The trial judge in this case held that the debtors were not entitled to repayment of the $13,000 they paid for the right to return principal, not merely without awaiting the time stipulated by their promissory note and mortgage contract, but also without paying $131,157.54 of interest included in the remaining 120 amortized monthly payments of $3,296.48 each. (The 120 payments would total $395,577.60, of which only $264,006.06 was unpaid principal, leaving $131,157.54 interest.) The trial judge thus rejected plaintiff debtors' contention that the term was exclusively in their favor and determined the contrary. If as in France the trial judge be the "sovereign appraiser" of the implications of the circumstances of this mortgage loan (including the mortgage note's provision for amortized monthly payments and the creditor's desire to establish thereby a regular monthly income), then this determination by the trial judge should be affirmed.
We should therefore hold that the original promissory note was valid and enforceable, and that plaintiffs are not entitled to the return of any part of the $13,000 payment they made, by valid and executed contract of novation, C.C. 2186, to escape $131,572 of interest under that note.

II
Plaintiffs' payment and defendant's return of plaintiffs' note at least constitute a valid transaction or compromise, and are therefore not rescindable.
C.C. 3071 defines the compromise as an agreement between persons "who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing."
Even if a Demolombe today persuade the Louisiana courts that a borrower always has the right to prepay a loan at interest, that had not happened before this compromise was struck nor before this majority had ruled in this very case. The position of plaintiffs' counsel in his demand letter that there was "absolutely no legal or moral justification for the payment" is insupportable. At the time of the compromise, it was at least arguable (with the great weight of authority, as noted in part I above) that the term of a loan at interest is stipulated in favor of the creditor as well as of the debtor. If the "general understanding" of Aubry and Rau and other commentators is wrong, the compromise nevertheless "can not be attacked on account of any error in law." C.C. 3078.

III
The payment to defendant was not usury.
Plaintiffs may deem the creditor usurious, but the law does not subscribe to that view of usury. La.R.S. 9:3505 declares certain charges shall not be considered interest on any conventional obligation secured by immovable mortgage, including "(1) Charges for the prepayment of the loan, or any installment or part thereof, prior to the time fixed for the payment of same...." (See also C.C. 2924, as adopted in 1870 and to this date, allowing the owner of any negotiable instrument payable to order to collect its full amount, notwithstanding that it includes interest or discount at a rate greater than the maximum legal rate of interest.) The law of usury thus does not invalidate the contracts by which plaintiffs paid $13,000 at once to escape a lawful obligation to pay, over a period of ten years, over $130,000 in interest.

IV
Most fundamental of all, plaintiffs' suit was correctly dismissed because, in business vernacular, a deal is a deal.
*201 Contracts are enforceable, including promissory notes. The general contract law includes C.C. 1901 (1870):
"Agreements legally entered into have the effect of laws on those who have formed them.
"They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
"They must be performed with good faith."
The law on promissory notes includes R.S. 10:3-413(1): "The maker or acceptor engages that he will pay the instrument according to its tenor...."
The Louisiana Civil Code articles relative to obligations subject to a term do not undermine those foundations of contract and commerce.
References are to the 1870 Code articles, for the contracts at issue were formed prior to the revision of the obligations articles by La. Acts 1984 No. 331. Art. 2502 provides that what is due at a certain time cannot be demanded earlier by the creditor, but if paid in advance "can not be redemanded." Art. 2503 states that the term "is always presumed to be stipulated in favor of the debtor, unless it result from the stipulation, or from circumstances, that it was also agreed upon in favor of the creditor." Art. 2503 does not moralize, for it would allow the note at issue to stipulate that plaintiffs could not repay in advance. Demolombe, XXV, 630, would not enforce such a stipulation nor, because of its presence, reject plaintiffs' demand for return of part of the money he paid to escape his note and mortgage. If we follow Demolombe, then, it makes no difference for whose benefit the term is stipulated in our circumstances. The borrower always wins.
If the borrower is free to call off the bargain, to repay at any instant, how can the lender be not equally free, as art. 2052 declares? What is the cause, the consideration, for a lender of money at interest to commit his money for a term? In the absence of an option contract (paid for by commitment fee or other "points"), is it not the interest that the borrower agrees to pay to the lender for the use of the money for that term? If the borrower is not bound to pay the interest for the term but can cancel at will, then the lender cannot be bound, for his obligation would lack cause. Without cause, art. 1893 provides, an obligation "can have no effect."
A deal is a deal. And not for just one party. Loans at interest are contracts enforceable according to their terms.

V
The statement of In re Hibernia Bank & Trust Co., 189 La. 813, 180 So. 646 (1938), that a maker has no right to pay a note before its maturity is conceded to be obiter dictum rather than the holding of the case.
And the same reasoning in Lindsay Realty Corporation v. Bellina, 320 So.2d 572 (La.App. 4 Cir.1975), is an alternative holding, and may therefore be deemed not entitled to be followed. (This court did, nevertheless, there reason that a purported acceptance providing prepayment without penalty was not a valid acceptance of an offer of sale for a price payable monthly over 25 years with 7% interest. The court "reject[ed] plaintiff's argument that purchaser is entitled to the right of prepayment without penalty where there exists no prohibition against prepayment," reasoning by analogy from the "well settled [rule] that the maker of a note has no right to payment before maturity without the consent of the holder." Id. at 574.)
On the other hand, State v. Ratzburg, 215 La. 295, 40 So.2d 395 (1949), is equally distinguishable. Its note was payable, indefinitely until principal was paid, in $40 installments "on or before" the fifth day of each month, with interest "from date until paid." As to each installment, the only promise was that it would be paid "on or before," say, November 5, 1947 or 1949, and only with interest "from date until paid." A payment on October 5, 1947 was, it hardly need be said, "before" November 5, 1947 or November 5, 1949. And interest through October 5, 1947, when full payment was tendered, was interest "from date until paid." Accordingly, the borrower in Ratzburg performed his contract, paid *202 his note, "according to its tenor." That contract did not provide for payment "on" November 5, 1949 (with interest until then or thereafter paid). If one consider the term of that "on or before" November 5, 1949 installment as extending to November 5, 1949, then that term, by ordinary English usage, was surely for the exclusive benefit of the borrower. The borrower was therefore entitled by art. 2053 as well as by the wording of the contract to pay "before" November 5, 1949. Ratzburg does not justify reversing the trial judge in this case.
The note and contract in this case result from plaintiffs' purchase of property from defendant with another person lending the bulk of the price and taking a first mortgage. For the balance of the price, by their note and mortgage plaintiffs promised to pay to defendant's order
"$325,000 ... with interest at ... 9% per annum from date until paid.... The principal and interest shall be paid in 180 monthly installments of $3,296.48 each... on November 5, 1978, and ... on the fifth day of each and every succeeding month until all of 180 monthly installments have been paid."
That language itself indicates that the term of the 180 installments is for the benefit of creditor as well as debtor, for, beyond question, the stipulation of interest is for the lender's benefit. See In re Hibernia Bank & Trust Co., supra.
This writer, prior to researching the matter, was of the view that the term (not the interest) in an installment loan was for the exclusive benefit of the borrower (unless the contract prohibited prepayment even with full interest, as land sales sometimes did under former capital gains tax law allowing apportionment of tax if no more than 30% was received in one year). That view would not alter the harsh reality that a long-term extension of credit obliges both creditor and debtor for its term. The harsh reality for the creditor here was that she could not demand payment before the term of the debt had passed, C.C. 2052. If she needed money, for howsoever sympathetic a cause, she could not demand that the debtors repay in advance. In that sense, of course the term of the debt is for the benefit of the debtors, and of course the debtors could renounce that benefit, though the creditor could not. The harsh reality for the debtors, however, is that, although they may renounce the term and pay in advance of its expiration, they have no legal right to do so except by paying as well the stipulated interest for the entire contractual term  a reality that lends sympathy to Demolombe's concern, though better solutions are available (such as, for plaintiffs' purpose, a wrap-around mortgage, R.S. 9:3504 B). The debtors are entitled to renounce the term, but they are not entitled to "renounce" the interest, for the interest is stipulated for the benefit of the creditor.
Because the law enforces contracts, plaintiffs could only revoke their obligation to pay interest if defendant consented. Defendant declined to consent except on payment to her of $13,000. Plaintiffs agreed to and did pay that $13,000 in order to be released from their obligation to pay $131,000 interest over a period of ten years. That second contract, of novation, C.C. 2185, or compromise, C.C. 3071, equally had "the effect of laws on those who have formed [it]," C.C. 1901. Plaintiffs equally cannot revoke that contract except with defendant's consent.

VI
Finally, although defendant's claim for attorney's fees is otherwise as meritorious as if the note had been "placed in the hands of an attorney ... to institute legal proceedings to recover [its] amount ...," that is not what happened here and that is the only circumstance under which the maker agreed to pay attorney's fees. The trial judge correctly so ruled.
The trial court's judgment should be affirmed.